## POOL *vs.* LOOMIS.

An officer has no right to execute a writ of replevin, until he has received the bond required to be executed by the plaintiff, or some person for him, which fact the return must show, or it is defective.

It is also defective if it does not show an execution of the writ by reading to the defendant, or delivering him a copy, or leaving a copy at his usual place of abode, with some white person of his family over fifteen years of age.

It must also set forth with certainty the contents of the notice required to be delivered to or left for him, and state that it was signed by himself.

Requisites of a good return in replevin.

But any defect in the return can be no ground for dismissing the suit on motion.

If a writ of replevin is not properly executed, the clerk can issue an alias without any order of the Court.    Nor can the Court dismiss the plaintiff's case, on account of a defect in the return, because the plaintiff "refuses and omits" to amend the return.

When a defendant has not appeared to the action, or become legally a party to the suit, no valid judgment can be pronounced, either for or against him, not even of non-suit or for costs.

When a cause has been argued and submitted in this Court, it is, until the decision, properly under advisement; and, if either party die before final judgment, the judgment may be rendered in the names of the original parties, as of a day previous to such death; or if the death of either party be suggested and proven, a *nunc pro tunc* order may be made, to extend back to a day after the submission and before such death.

THIS was an action of replevin, determined in the Phillips Circuit Court, in September, 1842, before the Hon. JOHN C. P. TOLLESON, one of the circuit judges.    William B. Pool sued Warner P. Loomis, in replevin in the *cepit*, for a negro girl.    On the writ issued in the case, the officer made the following return: " By virtue of this writ, to me directed, I did, on the first day of November, 1842, at Phillips

Pool *vs.* Loomis.

county, replevin the property within described, found in the possession of the within named Warner P. Loomis, to wit: one negro girl, of black complexion, about eight years of age, and called by the name of Celia; whereupon, I ascertained the value of said property to be $250 00, by the oaths of Josiah S. McKiel and William L. Martin, witnesses; and the said complainant, William B. Pool, having on the same day executed his bond to me, with Philip Ramer and F. Hanks, residents of said county of Phillips, as securities, who were approved by me, in the sum of $700 00, conditioned as required by law. I did, on the same day, deliver said slave to said complainant, W. B. Pool; and said bond is herewith returned; and I further executed this writ on Warner P. Loomis, at his residence, in Phillips county, by then and there leaving with a white member of the family of said Loomis, over the age of fifteen years, a notice in writing, in the form and to the effect required by the statute."

At the term to which the writ was returnable, the defendant moved " to dismiss the action for want of execution of the writ, in accordance with the provisions of the statute in such cases made and provided," and prayed a return of the property, and a writ of inquiry to assess his damages, &c. The Court sustained the motion; ordered the suit to be dismissed; gave judgment that the property replevied be returned to the defendant; awarded a writ of inquiry to sustain his damages, which was executed, and the damages assessed by a jury; and then pronounced a final judgment in favor of the defendant, not only for the damages so assessed, and his costs expended in defending the suit, but also, " that said plaintiff take nothing by his said suit of replevin, and that said defendant go hence thereof without day, and said plaintiff be in mercy, &c." The plaintiff excepted to the opinion of the Court dismissing his suit, and also to each subsequent proceeding in the case, and appealed.

The case was argued here by *W. & E. Cummins,* for the appellant, and *Hempstead & Johnson,* contra.

*By the Court,* RINGO, C. J. Several questions are presented by the record and assignment of errors. The first is, did the Court be-

low err in dismissing the suit on the appellee's motion? This motion is based solely upon the ground, that the return to the writ of replevin does not show a valid legal execution of the writ on the defendant. That the return is defective, and wholly insufficient to bind the defendant below to appear to the action, or, in default of his appearance, to authorize a judgment against him, there can, in our opinion, be but little doubt, because it not only appears affirmatively on the face of the return, that the sheriff, contrary to the express inhibition of the statute, proceeded in the execution of the writ, and replevied the property therein mentioned, before he had received the bond required to be executed to him by the plaintiff, or some other person in his behalf, with sufficient security, to be approved by him, in a sum at least double the value of the property specified in the writ, ascertained by the oath of one or more witnesses, sworn and examined by him for this purpose, according to the provisions of the 7th and 8th sections of the 126th chapter of the *Rev. St. Ark. p.* 660; but also, because it wholly fails to show that he either read the writ to the defendant, or delivered him a copy thereof, or left a copy thereof at his usual place of abode, with some white person of the family over fifteen years of age, as he was required to do by the provisions of the 29th section of the same statute, which enacts, that "the writ shall be served in the same time and manner as in other actions;" and does not set forth, with sufficient certainty, the contents of the notice left by him at the residence of the defendant, or show that it was signed by him, as required by the 10th section of the statute above cited.

According to the several statutory provisions on the subject, the return, when the property is replevied and delivered to the plaintiff, as in this case, must, in our opinion, show, with reasonable certainty, that the plaintiff's bond was executed before, and was in the hands of the officer charged with the execution of the writ, at the time of its execution, and the names and places of residence respectively, of the securities therein; what property is replevied, and the disposition thereof made by him; that the writ was read to a defendant, or a true copy thereof delivered to him, or left at his usual place of abode, with some white person of the family over fifteen years of age; and that a brief notice in writing, signed by the officer executing the writ, and

Pool *vs.* Loomis.

containing a statement of the name of the plaintiff, the name of his attorney, if the writ be prosecuted by one, and the time and place where the defendant is required to appear, was delivered to the defendant personally, if he can be found; or that he could not be found, and therefore a like notice, in writing, was left at his usual place of abode, with some white person over the age of fifteen years, and a member of his family. *Rev. St. Ark.*, *ch.* 126, *sec.* 7, 8, 9, 10, 21, 22, 29, and *ch.* 116, *sec.* 13, 14; or according to the provisions of the section last cited, show that he offered to read the writ to the defendant, or deliver him a copy thereof, and that he refused to hear it read, or to receive such copy. But admitting the return to be insufficient, as we think it unquestionably is, that constituted no legal ground upon which the Court could dismiss the suit on the motion of the defendant, according to the express adjudication of this Court, in the case of *Hughes vs. Martin*, 1 *Ark. Rep.* 386.

But the bill of exceptions taken by the plaintiff, after stating the plaintiff's exception to the opinion of the Court dismissing the suit, shows that "the Court also, immediately upon sustaining said motion of said plaintiff, decided and determined that, under the statute, no other or further proceedings could be had in the cause by said plaintiff, unless said return on said writ could be amended, so as to comply with the requisitions of the statute, according to the judgment of the Court, *which plaintiff refused and omitted to do.*" This statement in the record, as we conceive, presents the question whether or not the plaintiff in replevin can, if his original writ be not executed, have an alias or pluries, as in other actions at law. The solution of this question is, we think, to be found in the 8th section of the 159th chapter of the Revised Statutes of this State, which declares that "when any writ or other process, issued out of any Court of this State, shall not be executed, the clerk of such court, on the application of the party suing out the same, shall issue an alias, pluries, or other proper process, without an order of court for that purpose." This language is surely comprehensive enough to include the writ of replevin, and does, in our opinion, embrace it, as well as all other writs issued out of any court. And we are not aware of any restriction whatever upon this authority conferred by the statutory provisions above quoted, upon the clerks.

His authority, however, is, in this instance, made to depend upon the fact of the non-execution of the original or previously issued process; and therefore, where that fact does not appear by the return of the former writ, the clerk derives no authority from the provisions of the statute above quoted, to issue any such alias or pluries writ.   The return to the writ issued in this case being insufficient to bind the defendant to appear, the law, in our opinion, regards the process as not executed, and the plaintiff was, therefore, entitled to an alias, without any order of court directing it to issue; and therefore the refusal or omission of the plaintiff to amend the return, a matter over which he, of course, had no control, but which belonged exclusively to the officer charged with the execution of the writ, who is always presumed to make a true return of all of his official acts done by virtue of legal process, and, in this instance, probably could not have amended his return, so as to show a valid service of the writ on the defendant, constituted no legal ground upon which the Court could dismiss his suit or adjudge a return of the property to the defendant.   Besides, the record shows that, in point of time, the Court had, in fact, sustained the motion of the defendant, and dismissed the suit before the plaintiff refused to amend the return.   We, however, attach but little importance to this circumstance, as the plaintiff was there in Court, prosecuting his plaint, until he was arrested therein by the judgment or decision of the Court on the defendant's motion, without the defendant having ever appeared to the action, or become legally a party to the suit in Court; and therefore, as no valid judgment whatever could then have been pronounced against him in the cause, so, for the like reason, no judgment could be legally given therein for him against the plaintiff, not even a judgment of non-suit or for costs, as was held by this Court in the case of *Hartley vs. Tunstall, Waring, and Byrd,* 3 *Ark. Rep.* 119.   And the defendant, if he wished to obviate the delay occasioned by the non-execution of the process, instead of moving to dismiss the suit because the process was not executed, should have made himself a party to it by entering his voluntary appearance to the action, and thereby have prevented the delay which, as the plaintiff, must otherwise have been unavoidable, as he could not proceed in the cause to judgment, until the defendant was legally served with process

Pool *vs.* Loomis.

binding him to appear; and such service could only be obtained upon his suing out an alias or pluries writ. Besides, if the defendant should be damnified by any unreasonable or unnecessary delay of the plaintiff in the prosecution of the suit, his remedy against the plaintiff and his sureties, on their bond to the sheriff, which, if sufficient, is held in trust for the defendant, and may be assigned to him at any time after judgment is rendered for him in the action, is ample and complete.

The Circuit Court, therefore, in our opinion, erred: first, in dismissing the suit on the motion of the defendant, on the ground that there was no valid execution of the process upon him; secondly, in deciding that no other or further proceedings could be had in the case by the plaintiff, unless the return of the writ could be so amended as to show a valid legal execution thereof, when the plaintiff was by law entitled to an alias writ; and thereby, in pronouncing and entering up judgment for and in the name of a person, who was not legally before the Court as a party to the suit, and therefore could not be legally bound by any judgment in the cause, either for or against him.

Judgment reversed, and defendant to be considered in Court.

The death of the appellee, since the argument and submission of this cause, being suggested and proven to the satisfaction of the Court, a motion was made by the appellant to enter judgment *nunc pro tunc* as of a day previous to such death.

*By the Court,* PASCHAL, J. This case was argued and submitted to the Court since the commencement of the January term. The Court took the case under advisement; and since the delivery of the opinion, the death of Loomis, the defendant in the action, as well as the defendant here, has been suggested; and it has been proved that he departed this life since the case was taken under advisement. A motion has been made that judgment be rendered against him, in accordance with the opinion of this Court. A motion was sustained upon a like suggestion, in this Court, in the case of *Carter, Ex'r of Ellis, vs. Menifee,* 4 *Ark. Rep.* 152; but as the order was a mere matter of record, it does not appear in the report of the case; nor was Menifee's death suggested on the record. The Court there proceeded

upon the common law rule, that, if either party die *after verdict*, in vacation, judgment might have been entered that vacation, as of a preceding term; and it would have been a judgment at common law, as of the preceding term, though it be not so upon the statute of frauds, in respect of purchasers, but from the signing. 2 *Tidd*, 846, and reported cases cited note *(e.)*

And if either party die after the special verdict, and pending the time taken for argument or advising thereon, or on a motion in arrest of judgment, or for a new trial, judgment may be entered at common law, after his death, as of the time at which the postea was returnable, or judgment would otherwise have been given *nunc pro tunc*, that the delay, arising from the act of the Court, may not turn to the prejudice of the party. 2 *Tidd*, 846, and cases in note *(f.)* As this question will be the subject of express adjudication in a case now before us, *(Jennings vs. Ashley, post)*, we shall forbear farther remarks upon the authorities on the subject, at present.

When a case has been argued and submitted in the Supreme Court, it is, until the decision, properly under advisement; and, if either party die before final judgment, the judgment may be rendered in the names of the original parties, as of a day previous to such death; or, if the death of either party be suggested or proven, a *nunc pro tunc* order may be made, to extend back to a day after the submission, and before such death.                     Order *nunc pro tunc*.